IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COREY A. DICK,<br>    Plaintiff,<br><br>v.<br><br>PRIMECARE MEDICAL, INC., *et al.*,<br>    Defendants. | :<br>:<br>:<br>:    CIVIL ACTION NO. 24-CV-6760<br>:<br>:<br>: |

## MEMORANDUM

**PEREZ, J.**                                                                                                               **APRIL 10, 2025**

*Pro se* incarcerated Plaintiff Corey A. Dick filed this civil action against the Bucks County Correctional Facility (BCCF) and its medical contractor, PrimeCare Medical, Inc. The claims relate to a PrimeCare dentist's alleged errors during an extraction procedure and the allegedly inadequate care he received afterwards. Dick seeks leave to proceed *in forma pauperis* (ECF No. 1). For the following reasons, the Court will grant Dick leave to proceed *in forma pauperis* and dismiss his Complaint (ECF No. 2) in part with prejudice and in part without prejudice. Dick will be permitted to file an amended complaint.

I.        **FACTUAL ALLEGATIONS**[1]

On or about February 20, 2023, Pennsylvania State Troopers arrested Dick and took him to the barracks for booking. (Compl. at 2.) The Bucks County Sheriff's Department transported him to the BCCF, and Dick submitted a request to see a dentist. (*Id.*) Prison officials took Dick to BCCF's medical department on February 27. (*Id.*) He learned that he would need to have two teeth extracted that day from the right-side of his mouth. (*Id.*) Ordinarily, only one tooth may be

---

[1] The factual allegations set forth in this Memorandum are taken from Dick's Complaint (ECF No. 2). The Court adopts the pagination supplied by the CM/ECF docketing system.

pulled per visit. (*Id.*) Dick received a local anesthetic for the procedure. (*Id.* at 3.) After the procedure commenced, Dick heard a "cracking whip" sound, and felt "sharp, stabbing pain shoot through [his] entire face." (*Id.*) When he screamed with pain, the dentist assured him that "everything is fine, but she was a tough one to get out though!" (*Id.*) Dick returned to the housing unit after the procedure and was to begin a course of antibiotics to prevent infection. (*Id.*)

Three to four weeks later, Dick experienced severe pain and discomfort and returned to the medical department. (*Id.*) The same dentist who performed the extraction examined him. (*Id.*) After a visual inspection and an x-ray, the dentist stated that "everything looks fine and you're healing up nicely. You'll be fine in a few more weeks." (*Id.*) Dick started a second round of antibiotics. (*Id.*) After approximately a week, Dick observed that a brown-green fluid had soaked into the medical gauze, and it began to drain into his mouth which made him feel nauseous and sick. (*Id.*) Eating and drinking became very painful, and he submitted a sick call slip to see the dentist. (*Id.*) The same dentist again visually inspected the area and took another x-ray. (*Id.* at 4.) Dick asserts that the dentist admitted that he had erred during the procedure because a bone fragment had been broken and removed from the upper right jawbone. (*Id.*) Dick claims that "an 11.1 mm size bone-fragment was removed and disposed of on 2/27/23," during the procedure. (*Id.* at 5.) The dentist explained that Dick would need to consult with an outside oral surgeon to discuss the options for corrective surgery. (*Id*. at 4.) Dick returned to his unit with a prescription for Prednisone to combat the mounting infection. (*Id*.)

The infection in Dick's mouth and face continued to worsen over the subsequent three to four months. On July 18, 2023, two corrections officers escorted Dick to an examination by an oral surgeon at the Oral Surgery Group in Doylestown, Pennsylvania. (*Id*. at 5.) Dick had an x-

ray and CAT scan of the area.  (*Id.*)  According to Dick, the reviewing oral surgeon concluded that "invasive" surgery was needed to correct the defect, and that it was "'plain as day' that a 'massive' infection was present through the entire right side of [Dick's] face and neck area, and it was caused by the defect/injury sustained in February 2023."  (*Id*.)  During the month following the appointment, Dick suffered a "massive, growing infection and constant drainage," which caused him pain and sickness, and made it difficult for him to eat.  (*Id*.)

On August 20, 2023, two corrections officers took Dick to another appointment outside of BCCF, at Pinnacle E.N.T., in Doylestown, Pennsylvania.  (*Id*. at 6.)  A surgeon there explained how he would "attempt" to fix the error and that he would coordinate with BCCF to schedule a date for the surgery.  (*Id*.)

Dick was to be released on parole on September 22, 2023.  A few days before that, the medical department at BCCF informed him that the surgery was scheduled and warned that PrimeCare would not pay for the surgery if Dick was released from custody before the surgery.  (*Id*.)  After his release from BCCF, Dick called Doylestown Hospital-Pinnacle E.N.T. and confirmed the scheduled surgery.  (*Id*. at 7.)  The hospital informed him that he would be financially responsible to cover the costs because PrimeCare withdrew the funding for the surgery as of September 22, 2023. (*Id*.)  Dick could not afford to pay for it out of pocket and his insurance did not cover the procedure, so he did not go through with the surgery.  (*Id*. at 6-7.)

Dick filed this Complaint in December 2024 seeking money damages and alleging claims of medical malpractice, gross negligence, physical and mental pain and suffering, as well as "tortious interference w/life."[2]  (*Id*. at 7.)

---

[2] Although he says he was released on parole in September 2023, Dick has informed the Court that he is incarcerated again at BCCF.  (*See* ECF No. 11.)

## II.  STANDARD OF REVIEW

The Court will grant Dick leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.  Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the complaint if, among other things, it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  When the litigation is in this early stage, the Court accepts the facts alleged in the *pro se* complaint as true, draws all reasonable inferences in the plaintiff's favor, and considers whether the complaint, liberally construed, contains facts sufficient to state a plausible claim.  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Dick is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III. DISCUSSION

Dick has raised express claims sounding in state law, which include medical malpractice and negligence. The Complaint may also be fairly read to include claims for deliberate indifference to a serious medical need.[3] *See Vogt*, 8 F.4th at 185 (stating that the Court will "apply the relevant legal principle even when the complaint has failed to name it.") (citing *Mala*, 704 F.3d at 244). The vehicle by which federal constitutional claims may be brought in federal court is an action under 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v.*

---

[3] It would appear from state court records that Dick was a pretrial detainee at the time of the extraction in February 2023, *see Commonwealth v. Dick*, No. CP-09-CR-0005056-2022 (C.P. Bucks), and the Fourteenth Amendment would thus govern his constitutional claim for deliberate indifference to a serious medical need. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). However, the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (*per curiam*); *see also Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019) (declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care).

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

5

*Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

### A.     Federal Claims Against the BCCF and PrimeCare

Dick names the BCCF and PrimeCare as Defendants, but neither is a proper defendant in this § 1983 action. The Court must dismiss any claims asserted against the BCCF because a jail or correctional facility is not a "person" under § 1983. *Edwards v. Bucks Cty. Corr. Facility*, No. 19-4923, 2019 WL 5579486, at *2 (E.D. Pa. Oct. 29, 2019) ("Bucks County Correctional Facility is not an entity susceptible to suit under § 1983."); *Cephas v. George W. Hill Corr. Facility*, No. 09-6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010).

The claims against PrimeCare also cannot proceed as currently pled. A private corporation under contract to provide medical services at a jail or prison may be liable under § 1983 in certain circumstances. The United States Court of Appeals for the Third Circuit has held that "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale v. Camden Cnty Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (applying *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978) to claims against medical contractor)). Rather, [t]o plead a § 1983 claim against a prison medical provider, a plaintiff must allege the provider had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale*, 318 F.3d at 583-84 (citing *Bd. of the Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S.

397, 404 (1997)).⁴  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).  It is not enough, however, to allege the existence of a policy or a custom.  "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (*citing Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).

   Dick has not tied his allegations of deliberate indifference to a custom or policy of PrimeCare.  In fact, he has not referenced any policy or custom by PrimeCare in his Complaint.  Dick instead makes factual claims concerning his care by a particular dentist who allegedly harmed him during an extraction procedure.  (Compl. at 2-5.)  Because PrimeCare cannot be held liable under a *respondeat superior* theory for the actions of its employee, *see Sims*, 635 F. App'x at 20, the allegations about the dentist are insufficient to allege a plausible claim against PrimeCare. *Lomax v. City of Philadelphia*, No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a

---

⁴ "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id*. (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  In the context of a contract medical provider, the provider's "failure to train or supervise must amount to a policy or custom in disregard of an obvious risk that its employees or agents would commit constitutional violations." *Ponzini v. PrimeCare Med., Inc.*, 269 F. Supp. 3d 444, 526 (M.D. Pa. 2017), *aff'd in part, vacated in part on other grounds sub nom. Ponzini v. Monroe Cnty.*, 789 F. App'x 313 (3d Cir. 2019).  Dick has not alleged that he was injured due to a failure to supervise, train, or discipline.

custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs." (citations and quotations omitted)).

B.  **State Claims**

Having dismissed the Dick's federal claims, the Court will not exercise supplemental jurisdiction over any remaining state law claims, including those for negligence and medical malpractice. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).

For diversity purposes, an individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010). A corporation is a citizen of the state in which it is incorporated and the state in which it has its principal place of business. *See* 28 U.S.C. § 1332(c). It is the plaintiff's burden to establish diversity of citizenship, *see Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate

complete diversity between the parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).

Dick does not allege the citizenship of the parties. Rather, he provides only the Pennsylvania address of BCCF for himself and Pennsylvania addresses for the Defendants, which suggests that complete diversity is lacking. Accordingly, he has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue. The Court will dismiss the state law claims for lack of subject matter jurisdiction. The dismissal is without prejudice, and Dick may file these claims in the appropriate state court if he chooses to do so. The Court expresses no opinion on the merits of any such claim.

## IV.     CONCLUSION

For the foregoing reasons, the Court will grant Dick leave to proceed *in forma pauperis*, and dismiss his Complaint in part with prejudice and in part without prejudice. Dick's claims against BCCF will be dismissed with prejudice. The remainder of his claims will be dismissed without prejudice. The Court will permit Dick an opportunity to file an amended complaint in the event he can address the defects the Court has noted as to his claims that were dismissed without prejudice. The Court will also deny without prejudice as premature Dick's requests for the appointment of counsel and for certain records.[5]

---

[5] Dick's request for the appointment of counsel (ECF No. 4) is premature at this stage of the litigation because his case has not yet passed the screening stage under 28 U.S.C. § 1915. Dick's amended complaint has not yet been filed or screened by the Court for merit. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (before exercising discretion to appoint counsel "the district court must consider as a threshold matter the merits of the plaintiff's claim"). The Court will therefore deny Dick's request without prejudice. Dick may renew his request after any amended complaint, if he files one, has been screened by the Court. If Dick chooses to file a renewed motion, he should do so in accordance with the factors set forth by the United States Court of Appeals for the Third Circuit in *Tabron*. Likewise, Dick's "Request for Court Order for

Case 2:24-cv-06760-MRP    Document 19    Filed 04/10/25    Page 10 of 10

An appropriate order follows that provides further instruction on amending his claims if Dick wishes to do so.

                                                  **BY THE COURT:**

                                                  */s/ Mia R. Perez*

                                                  **MIA R. PEREZ, J.**

---

Medical and Dental Records" (ECF No. 12) will be denied without prejudice to renewal at the appropriate time after discovery is permitted to commence.

10